# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Brian Cummings,

    Plaintiff,

        v.

Mervis Diamond Corporation,
a Maryland corporation,

    Defendant.

Case No.:

## COMPLAINT

FOR HIS COMPLAINT in this matter, Plaintiff Brian Cummings, by and through his attorneys REVISION LEGAL, PLLC, states as follows:

## STATEMENT OF CASE

1. Plaintiff brings this action pursuant to 15 U.S.C. § 1114(2)(D)(iv)-(v) and 28 U.S.C. §§ 2201 and 2002 for a judgment declaring that his ownership and use of the domain names <mervisdiamondlawsuit.com> and <mervissexualharassmentlawsuit.com> ("Domain Names") do not infringe upon Defendant's trademark rights and preventing the transfer of the Domain Names to Defendant, which was ordered in an administrative panel decision published on July 15, 2016 under the Uniform Domain Name Dispute Resolution Policy ("UDRP") in a proceeding captioned *Mervis Diamond Corporation d/b/a Mervis Diamond Inporters v. Brian Cummings* Claim Number: FA1605001673789.

## PARTIES

2. Plaintiff, Brian Cummings ("Mr. Cummings"), is an individual residing in Nashville, Tennessee.

3. Defendant, Mervis Diamond Corporation ("Mervis") is a Maryland Corporation.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this trademark declaratory judgment action pursuant to 28 U.S.C. §§ 1331, 1338(a), 15 U.S.C § 1051 *et seq.*, and 28 U.S.C. §§ 2201(a) and 2202.

5. This Court has personal jurisdiction over Defendant because Defendant expressly and voluntarily agreed to submit to the jurisdiction of this Court when it initiated an administrative proceeding pursuant to the UDRP concerning the Domain Names. Specifically, Defendant voluntarily and expressly agreed in its UDRP complaint to submit to the jurisdiction of the principal office of the Domain Names' registrar, GoDaddy.com, LLC, which is located within this Judicial District at 14455 N. Hayden Rd. #219, Scottsdale, Arizona 85260.

6. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because the Domain Names are situated with the registrar, GoDaddy.com, LLC.

## FACTUAL ALLEGATIONS

7. Plaintiff Brian Cummings is a partner in the law firm Cummings Manookian, PLC, a law firm based in Nashville, Tennessee.

8. Plaintiff is a trial attorney law firm with an emphasis on protecting consumers and injured persons.

9. Plaintiff has established an international reputation for successfully pursuing consumer claims over the sale of fraudulently overgraded diamonds.

10. Diamonds are routinely sold in the United States accompanied by a certification or grading report from a diamond grading laboratory.

11. The industry standard for diamond grading certification is the Gemological Institute of America ("GIA"), the non-profit entity responsible for creating the Four C's of evaluating diamonds (color, cut, clarity, and carat weight).

12. However, other diamond grading labs exist, and one relevant to this discussion is EGL-International ("ELG-I"), a for-profit entity located in Israel.

13. For years, EGL-International was renowned within the industry to overstate the qualities, and consequently the value, of the diamonds it graded by dramatic margins.

14. It was not uncommon for EGL-International to inflate a diamond's grade by four colors and two clarity grades.

15. Because EGL-I grades were known by industry professionals to be exaggerated and unreliable, reputable jewelers refused to accept or deal in diamonds accompanied by EGL-International certifications.

16. During the same period of time, certain unscrupulous jewelers –such as Mevis– not only carried EGL-I certified diamonds, but made their sale central to their business models.

17. These jewelers would pass off inferior quality EGL-I diamonds labeled with the GIA terminology and standards that those EGL-I diamonds did not meet.

18. In doing so, retailers like Diamond Doctor could then claim to offer diamonds at wholesale pricing when, in reality, they were simply selling an overgraded stone acquired at a steep discount to a comparable GIA diamond.

19. This practice allowed those retailers to not only reap a profit margin that would not be possible selling legitimately-graded GIA diamonds, but to also claim to have undercut their competition's price.

20. In July 2014, Plaintiff began filing the first consumer lawsuits in the country over the sale of overgraded diamonds using EGL-I certifications.

21. The filings received huge attention locally, nationally, and throughout the diamond industry.

22. On September 9, 2014, in direct response to Plaintiff's suits, the world's largest online diamond exchange, RapNet, announced that it was de-listing all EGL-I diamonds, effectively banning their trade among wholesalers and retailers on its site.

23. The stated basis for the decision was EGL-I's known practice of overstating the qualities and characteristics of the diamonds it graded.

24. The fallout peaked on December 3, 2014 when, after more than forty years in existence, EGL-International announced that it was shutting down and would "soon cease to exist."

25. Its owners acknowledged its longtime practice of overgrading diamonds, and referred to Plaintiff's cases as one of the catalysts for their decision.

26. The public is largely unaware that such a fraud on the diamond industry has taken place.

27. Educating the public on what to look for when reviewing their diamond grading certificates is a matter of consumer protection, and that is exactly what Plaintiff offers through the Domain Names.

28. Plaintiff makes a nominative fair use of Mervis' alleged trademarks in order to educate the public.

29. The public would not be confused into thinking the Domain Names are sponsored by or affiliated with the Mervis.

30. When the public is educated about this fraud and determines that they may have a claim, they contact Plaintiff, who either files suit or refers the case to local attorneys.

31. Mervis filed a Complaint under the UDRP for administrative review on May 10, 2016 seeking the transfer of the Domain Names to Defendant.

32. On July 15, 2016, the administrative panel Ordered the Domain Names be transferred to Defendant. See **Exhibit 1**, UDRP Decision.

## CLAIM FOR RELIEF

### DECLARATORY JUDGMENT FOR NON-INFRINGEMENT OF TRADEMARK 28 U.S.C. §§ 2201 AND 2202 et seq.

33. Plaintiff repeats and incorporates herein by reference each and every one of the allegations above with the same force and effect as if set forth in detail herein again.

34. Mervis has claimed that Plaintiff's use of the Domain Names constitutes trademark infringement, has filed a UDRP Complaint with the National Arbitration Forum concerning same, and has caused the National Arbitration Forum to order the transfer of the Domain to Names to the Mervis. See **Exhibit 1**, UDRP Decision.

35. An actual, present, and justiciable controversy has arisen between Plaintiff and Defendant concerning Plaintiff's right to own the Domain Names.

36. Plaintiff seeks declaratory judgment from this Court that its use of the Domain Names in connection therewith does not constitute trademark infringement.

37. Plaintiff's sites do not amount to trademark infringement because there exists no likelihood of confusion between Plaintiff's sites and that of Defendant.

38. Unrelated pejorative terms within a domain name do not create a likelihood of confusion.

39. Plaintiff's use of any of Defendant's alleged trademark rights constitute nominative fair use.

## JURY DEMAND

Plaintiff demands a trial by jury for any issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully asks that the Court enter the following judgment against Defendant:

A. Declaring Plaintiff the rightful owner of the Domain Names;

B. Prohibiting transfer of the Domain Names into Defendant's possession, ownership, or control;

C. Awarding Plaintiff his actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law;

D. Awarding Plaintiff his costs and attorneys' fees; and,

E. Awarding Plaintiff any other relief to which he is entitled.

Respectfully submitted,

Date: July 28, 2016

/s/ Eric Misterovich
Eric Misterovich (P73422)
*Pro Hac Vice Application Forthcoming*
Revision Legal, PLLC
125 S. Kalamazoo Mall, Ste. 203
Kalamazoo, MI 49007
269.281.3908
269.235.9900 (f)